## PAROL TESTIMONY VARYING A WRITTEN INSTRUMENT.

[Common Pleas Court of Cuyahoga County.]

### JOHN HICKS v. ROBERT H. HICKS.

Decided, February 13, 1906.

*Promissory Notes—Advancements—Parol Testimony Varying Written Agreement—Statute of Frauds—Words and Phrases—Authority of Decisions in Other States.*

1. The decisions of courts in other states are not authority in the sense of that which is binding; but they should be consulted diligently and respectfully for enlightenment, and should be given great weight, or little weight, or no weight, according as their reasoning appeals to the judgment of the court considering the question.

2. Where the suit is on a promissory note set forth in the petition, and the averments of the answer if sustained by evidence would only tend to contradict and destroy the written contract therein embodied, an objection to the introduction of any evidence by the defendant under the pleadings should be sustained.

BEACOM, J.

Heard on motion for new trial.

The plaintiff, seventy-three years of age, brings this suit against the defendant, plaintiff's son, who lives apart from his father, having a family of his own. The action is upon a promissory note, which reads as follows:

"$2,000.00.                    CLEVELAND, Sep. 3, 1901.

"Two years after date I promise to pay to the order of John Hicks, two thousand dollars, at 1703 Cedar avenue. Value received at five per cent. interest, payable semi-annually.

"R. H. HICKS."

Defendant admits the execution of the note, but avers that he gave plaintiff the note merely to serve the purpose of a memorandum of the amount, and that it was expressly stipulated between them that the same was not to be collected, and that it was mutually agreed that said $2,000 was to be an ad-

vancement and was not to be paid but was to be charged against defendant's interest in plaintiff's estate.

It is undisputed that plaintiff and defendant, both residents of Cleveland, in the summer of 1901 viewed a farm in Solon township, this county, with a view to purchasing the same; that on the 3d day of September, the day on which the note is dated, the owner of said farm and the parties hereto and other persons met at the house of plaintiff; that then and there the owner of said farm executed a deed of the same to defendant; that plaintiff paid the seller $2,000 of the purchase money; that plaintiff's wife paid another thousand dollars thereof; that defendant secured the balance of the purchase money, $2,500, the entire purchase price being $5,500, by giving the seller his promissory note, secured by mortgage upon the land sold; that, subsequently, defendant sold said farm and paid said note so secured by mortgage; that the date upon the note is the date when the payments were made and the writings executed; and finally, there is no dispute but that defendant has paid plaintiff the interest stipulated in the note, and that the principal of said note has not been paid.

The case was submitted to a jury and a verdict rendered for defendant. Plaintiff, among other reasons, moves the court to grant a new trial, "because the verdict is not sustained by sufficient evidence."

The execution of the note having been admitted, the burden of proof is upon the defendant. In support of plaintiff's denial that, when he gave this $2,000 to apply on purchase price of said farm he intended to make a gift thereof in the nature of an advancement; that is, a gift which would be charged aaginst the interest of defendant in plaintiff's estate after his decease; we have the positive testimony of plaintiff that he never so intended, and never said he would do so, and never said that he had done so. There is also the fact of the regular payment of interest by the defendant, which is, however, not inconsistent with the defendant's claim. Finally, there is the undisputed writing, which reads, "Two years after date I promise to pay."

To maintain the burden of establishing the claim of defendant by evidence outweighing that of plaintiff there is the direct

testimony of defendant. In addition there is evidence of two kinds: First, that plaintiff took an active interest in this purchase, and second, that he made subsequent declarations tending to support defendant's claim. As to the first, it is undisputed that plaintiff was active in the negotiations in relation to the purchase, but the uncontradicted evidence is that defendant valued highly the good judgment and large business experience of plaintiff and that he counseled with him and advised with him about most if not all of his important undertakings.

As to the second class of evidence, that is, evidence of subsequent declarations, that plaintiff had said that he had "given" defendant this money, the chief weight comes from the fact that the word "give" is alleged to have been used by plaintiff in speaking of it. This is, however, a word of broader meaning than simply to donate. Its most common use is where the thought of donation is not in mind. We say that one gave so much for something which he has purchased. It is often used in the sense of a mere transfer without any thought of making a gift. Moreover, the slight weight to be attached to this sort of evidence is illustrated in the case of the witness Sambrook, who says that in a conversation with plaintiff, the plaintiff said, "What do you think of Robert selling the farm I gave him?" and again, in the statement of plaintiff's daughter, who testified that plaintiff said to her, "You are jealous about my giving this farm to Robert." It is plain that if plaintiff ever used such language, it could not have been used in the sense of making a gift, for under the admitted facts he did not give this farm to Robert. The admitted facts are that this farm was deeded directly to Robert, and that $1,000 of the purchase money was advanced by Robert's mother, and that $2,500 of the purchase price was secured by Robert's note, that being secured by a mortgage on the land, and this note was subsequently paid by Robert. So that, even though it be true that the father intended to make a gift of this $2,000 which was applied to the purchase of that land, it is manifestly not true that he ever gave Robert the farm. Moreover, all statements as to what the plaintiff may have said about this matter are affected by the well known infirmities of human memory, and most of these statements are

also affected by the self-interest of the witness, for they come chiefly from the defendant· or from those nearly related to him or from those who had at the time of the trial similar matters in litigation with plaintiff.

The court is of opinion that the evidence offered by defendant to support the averment of his answer falls short of outweighing the direct denials of the plaintiff and the clear "I promise to pay" of the note.

It is admitted by defendant that under the rule laid down in *Medill* v. *Fitzgerald,* 15 C. C., 415, that, to establish the averment of the answer, that this promissory note was evidence of· a gift, by a mere preponderance of the evidence, is not sufficient, but that it is obligatory upon the defendant to establish it by evidence "clear and convincing." The defendant has failed to establish this case by a preponderance of the evidence, and manifestly, if that be true, has failed to establish it by "clear and convincing" evidence.

This would dispose of this motion. The court desires, however, to pass upon another matter.

A new trial is sought on the ground "that the court erred in overruling plaintiff's objection to the introduction of any evidence by the defendant under the pleadings." Had it been necessary to pass upon that motion when made, the court would have granted it. Likewise when this same motion was renewed at the conclusion of the introduction of evidence, the court was disposed to grant it, but desired to pass upon this question at the latest time possible, and desired to have the benefit of the arguments of counsel, and an opportunity to make an independent examination of the cases and to have time for reflection upon this matter, so gravely important to the parties hereto.

It is elementary that a contract in writing can neither be added to nor varied nor contradicted by parol testimony. If its terms be obscure, that obscurity may be explained by proof of circumstances. In certain cases it has been held that evidence of an independent parol contract, not conflicting with the written contract, may be introduced, as in a case where a trust is thus engrafted upan a deed. But human language can not be

plainer than is that of this promissory note: "Two years after date I promise to pay John Hicks." This certainly needs no explanation. Nor does the answer aver an independent contract. It makes averments that if supported by evidence would tend only to contradict and destroy the written contract set forth in the petition. To allow evidence to be introduced to maintain the averments of the answer, that the defendant did not promise to pay in two years and that he did not promise to pay at any time, but that when said written contract was made there was a parol stipulation that he should not pay in two years and that he should never pay, is to allow parol evidence to be introduced to contradict and destroy a written contract. A judge has constantly pressed upon his attention the necessity and the wisdom of holding firmly to the rule that writings can not be destroyed by parol testimony, tainted, as such testimony is, with the infirmities of human memory and the infirmities of human character. Never did our ancestors adopt wiser legislation than when they adopted the so-called statute of frauds, providing that certain contracts could be made only in writing, and they knew then, as we know now, that the adoption of such a law did tend to prevent fraud and perjury, and they so named this law. Every modification and weakening of the firm rule that a written instrument is itself alone the conclusive evidence of the intention of the parties, simply tends to put a premium upon fraud and perjury. As ability to write becomes more common and universal courts should extend the scope of these laws rather than curtail it.

There is a class of cases to which 15 C. C., 415, *supra,* belongs, where it has been permitted, after the death of the ancestor, in the settlement of an estate to introduce parol testimony to show that a promissory note was intended as an advancement. Those are not the facts of this case, and if they were this court would follow these decisions unwillingly.

These are but two cases within my knowledge in which questions similar to those involved in this present case have been raised. One is *Brooks* v. *Latimer,* 44 Kan., 431, the other *Weaver* v. *Fries,* 85 Ill., 356. The first is in favor of defend-

ant herein, the second adverse thereto. In the Kansas case it is said:

"We do not deem the admission of evidence tending to show that a promissory note absolute by its express terms is a mere evidence of an advancement by a parent to a child to be in violation of that rule of evidence that forbids a written instrument to be varied by parol. This court is unusually liberal in the application of the rule that permits such inquiry."

The facts of the Illinois case are substantially those of the case at bar, and it was held on general demurrer "that the plea presented no defense, as it only set up a contemporaneous parol agreement different from the tenor of the note. The terms of the written contract can not be varied or changed by parol."

These decisions are in direct conflict, the court of higher reputation holding as this court holds in this present case. If, however, they were both adverse thereto, I should refuse to follow them, for any theory that tends to weaken the rule that a written contract can not be contradicted or destroyed by parol testimony seems so vicious and so wrong that I would not accept it from any court other than the two courts immediately superior to this one. The decisions of no other court constitutes an authority in the sense of that which is binding. They should be consulted diligently and respectfully for enlightenment and should be given great weight or little weight or no weight according as their reasoning appeals to the judgment of the court considering the question, for in the end it is the duty of a court to give its own best judgment and to be bound by no opinion in conflict with its sense of what is good law, unless that decision has been rendered by a court directly superior to it. Motion for new trial granted.

*Brady & Cashman,* for plaintiff.

*T. H. Johnson,* for defendant.