## No. 29,846.

RHODA DYE, *Appellant,* v. THE RAFTER FARM MORTGAGE COMPANY, *Appellee.*

(297 Pac. 672.)

Opinion filed April 11, 1931.

*M. A. Bender,* of Holton, for the appellant.

*Floyd W. Hobbs,* of Holton, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the payee of a promissory note to recover from the maker. The defense was that by oral agree-

ment the note was merely evidence that the payee had an interest in land the title to which stood in the name of the maker. Judgment was rendered against plaintiff for costs, hence this appeal.

After judgment the plaintiff, L. E. Dye, died. There was a revivor, and the appeal is prosecuted in the name of Rhoda Dye. As a matter of form the title of the action should not be changed (R. S. 60-738), but the change does not affect the merits of the appeal.

Defendant held a note of J. R. King for $2,700, which was secured by a second mortgage on real estate. Defendant assigned $1,700 of the note to L. E. Dye, and $1,000 to Edward Starin. After the assignment defendant had no interest in the note or mortgage. King defaulted. Defendant foreclosed the mortgage by action in its own name, purchased the land at foreclosure sale, and received a sheriff's deed to itself. Dye went to defendant and said he had nothing to show for his interest, and defendant gave him the dead $2,700 note and mortgage. James T. Rafter, president of defendant, who executed the note sued on on behalf of defendant, testified as follows:

"About three days later he brought it back and said he did not want this note, nor any other mortgage, but another note, and asked me for a note, and I gave him the note sued upon, and he said if the interest was paid he was in no hurry for the money. . . . He was willing to let it stay until it was paid off."

Robert Hurd, an officer and director of defendant, testified as follows:

"After the foreclosure I had a talk with plaintiff and his son George. Plaintiff said he did not want title to the farm. We kept title to the farm, paid interest on first mortgage, paid taxes, paid Starin his interest, paid Dye his interest. When George Dye came in and wanted something to show that he had certain interest in this farm, I suggested that we should keep the farm until we could sell it, and leave his and Mr. Starin's interest in the farm, and when the farm was sold they would get their money out of it. He did not want that, and did not want a deed for the farm, and later Mr. Rafter gave him a note, that is the note they are suing on to-day."

Hurd further testified as follows:

"Dye came in, and said, if you will pay the note in cash I will take $1,700, and I told him I could not do it. He said, if you cannot do that, I will take your note and release the farm. The $1,700 and back interest thereon makes up the note of $2,156 in suit."

The result is the testimony of defendant's officers shows they

proposed to Dye the arrangement pleaded as a defense to the note, and he rejected it. Dye proposed that defendant give him a note and he would release the farm. Thereupon a note was given for $2,156.20, which precisely equaled $1,700 plus back interest.

The note is a promissory note for $2,156.20, dated July 9, 1928, payable on demand to the order of L. E. Dye, with interest at eight per cent per annum, payable semiannually. When suit was commenced the note bore indorsements of interest paid January 9, 1929, July 9, 1929, and January 9, 1930.

Hurd testified as follows:

"The note sued upon was executed by the Rafter Farm Mortgage Company to have some record of what interest he had in that farm. He did not want title, did not want mortgage, this note was given as a record of the money he had in the farm at that time."

Defendant's brief says the lawsuit is the result of the well-known depression in land values. Probably so. The mortgage company had record title to the land. Dye had nothing which he could record, and the mortgage company could sell to an innocent purchaser. If the price of land went up Dye would get $1,700 and interest. The mortgage company would get all the profit. If the price of land went down Dye would stand the loss. · This was a neat arrangement for the mortgage company; but defendant's brief cites no case in which this court or any other court has held that the obligation of a plain promissory note may be thus contradicted by parol evidence. If the officers of this farm mortgage company handed Dye the lifeless original note and mortgage as evidence of whatever interest he had, and then when he protested gave him the note sued on, all without knowledge of the difference between a promissory note and a land contract, the fault does not lie with the law.

Suggestions in defendant's brief that the note was without consideration and was not to take effect until the land was sold, are trivial.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for plaintiff.

SLOAN, J., not participating.