T.C. Summary Opinion 2001-8


UNITED STATES TAX COURT


PETER SPULER, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8318-99S.                    Filed February 2, 2001.


Peter Spuler, Jr., pro se.

<u>Taylor Cortright</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect at the time the petition was filed.  The
decision to be entered is not reviewable by any other court, and
this opinion should not be cited as authority.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for the years in issue.

Respondent determined deficiencies, additions to tax, and penalties in petitioner's 1995 and 1996 Federal income taxes as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|-----------|-------------------------------|---------------------|
| 1995 | $12,222 | $378 | $2,157 |
| 1996 | 13,809 | 1,209 | 1,798 |

The issues for decision are: (1) Whether a distribution in 1995 to petitioner from the individual retirement account (IRA) of petitioner's deceased father is taxable to petitioner; (2) whether petitioner is entitled to deductions for contributions in 1995 and 1996 to a simplified employer pension-individual retirement account (SEP); (3) whether petitioner is entitled to deductions for amounts paid for self-employed health insurance; (4) whether petitioner is liable for additions to tax for failure to file timely returns for 1995 and 1996 pursuant to section 6651(a)(1); and (5) whether petitioner is liable for negligence penalties for 1995 and 1996 pursuant to section 6662(a).[1]

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition herein, petitioner resided in Fort Washington, Maryland.

---

[1] There are also adjustments to personal exemptions, itemized deductions, and the alternative minimum tax, which result from the above adjustments and are otherwise not in issue.

During the years in issue petitioner was employed full-time as an engineer for Greenhorne & O'Mara, Inc. Petitioner received a bachelor of science degree in engineering and master's degrees in public policy and business. In 1995 petitioner accepted the position at Greenhorne & O'Mara, Inc., of Director of Marketing for Federal Land Development and Infrastructure.

In 1986 petitioner filed a certificate of incorporation for Synergetics Engineering Corp. (SEC). According to a business plan dated March 1988, the mission of SEC was as follows:

> Synergetics has as its core mission to seek unique profitable business opportunities in the technical services market by focusing its total efforts on the high growth environmental quality segments of the overall market. The venture will always be market-driven, with primary attention to client needs. The management team will always nurture a direct personal relationship with each major client, within mutually shared objectives of unquestioned long-term technical reliability and uncompromised attention to long-term service needs.

For the taxable year ending July 31, 1987, SEC filed a Form 1120S, U.S. Income Tax Return for an S Corporation. The return reflects that petitioner, his wife, and other family members owned 100 percent of the shares of SEC. The return also reflected total income of $6,991, expenses of $9,313, and an ordinary loss of $2,322.

For the years in issue, no Forms 1120S were filed on behalf of SEC. The record is unclear to what extent SEC conducted any business during the years 1988 through 1994. Apparently during

1995 and 1996, petitioner, as a representative of SEC, contributed his services as a consulting engineer to nonprofit organizations such as Christian Fellowship Ministries. Neither SEC nor petitioner billed or received any money for such services. SEC did not receive taxable income during the years in issue, nor did SEC pay petitioner any sums as either salary or self-employment income during the years in issue.

Petitioner maintained an account at Charles Schwab titled in his name "UTA Charles Schwab & Co Inc, SEP-IRA DTD 11/20/93". Contributions were made to the account in the amounts of $27,500 for 1995 and $30,000 for 1996. Petitioner also paid $3,079 and $4,570 for self-employed health insurance for 1995 and 1996.

Petitioner's father, Peter J. Spuler, Sr. (Mr. Spuler), died in 1995. During that year petitioner received a distribution in the amount of $10,906 from Mr. Spuler's estate representing petitioner's share of an IRA owned by Mr. Spuler and held by the South Jersey S&L Association. The record is unclear as to whether petitioner was listed as a beneficiary of the IRA and/or whether the distribution was paid directly to petitioner or passed through the estate. Mr. Spuler's will provided that his estate would be liable for all Federal, State, and other taxes arising from the transfer of property under the will.

Petitioner received automatic extensions to file his 1995 and 1996 Federal income tax returns. The due date of the 1995

and 1996 returns as extended were August 15, 1996, and August 15, 1997, respectively. Petitioner's 1995 and 1996 tax returns were received by respondent on August 21, 1996, and October 22, 1997, respectively.

Respondent mailed a notice of deficiency to petitioner on February 12, 1999. The notice determined that petitioner failed to report income of $10,906 in 1995 received as a distribution from Mr. Spuler's IRA. The notice also disallowed petitioner's deductions for contributions to a simplified employee pension plan and payments for self-employment health insurance, as petitioner failed to satisfy the requirements of each deduction. Respondent also determined that petitioner was liable for an addition to tax for failure to file a timely return under section 6651(a)(1) and for the negligence penalty under section 6662(a) for each of the taxable years 1995 and 1996.

After the trial of this case, the Court held a teleconference with the parties. The Court expressed concern over the inconclusive evidence regarding the IRA distribution. The Court provided petitioner an opportunity to submit additional documents regarding the IRA. We reopened the record and admitted into evidence a letter from petitioner and a copy of Mr. Spuler's will.

IRA Distribution From Mr. Spuler

Generally, any amount paid or distributed to a taxpayer from an IRA is included in gross income in the manner provided by section 72. See sec. 408(d)(1). A payee will generally not have a basis in the IRA, unless the payee contributed nondeductible amounts to the IRA. See secs. 72(e), 219(a) and (b), 408(d)(1) and (2); Campbell v. Commissioner, 108 T.C. 54 (1997); sec. 1.408-4(a), (c), Income Tax Regs. When a payee contributes nondeductible amounts, the payee's gross income does include an amount of the distribution in proportion to the nondeductible contribution as compared to the total contribution to the IRA. See secs. 72(e), 408(d)(1); Campbell v. Commissioner, supra; sec. 1.408-4(c), Income Tax Regs.

The parties agree that petitioner received $10,906 in 1995 from Mr. Spuler's IRA. Petitioner contends that Mr. Spuler had basis in the IRA for the following reason:

> However, given the history of the contributions as made subsequent to my father's retirement from his lifetime primary employer, Public Service Gas & Electric, it is reasonable to assume that they were non-deductible contributions. He was earning minor wages working part-time during those years, and would not have needed and or required deductible contributions.

We do not find petitioner's unsupported self-serving statement to be sufficient to support the assertion that the IRA included nondeductible contributions. See Niedringhaus v. Commissioner, 99 T.C. 202, 219-220 (1992); Tokarski v. Commissioner, 87 T.C.

74, 77 (1986).  Petitioner failed to establish that Mr. Spuler made nondeductible contributions to the IRA.[2]  Thus, the entire distribution is includable in gross income.

Petitioner additionally argues that he is not liable for tax on the IRA distribution.  Mr. Spuler's will provides that all Federal, State, and other death taxes associated with the transfer of property from his estate to his beneficiaries will be paid by his estate, and that none of the beneficiaries are liable for the taxes.

State law determines the legal rights and interests in property and transfers thereof.  However, Federal law determines the manner and extent to which such rights and interests will be subjected to Federal tax.  See Helvering v. Stuart, 317 U.S. 154, 161 (1942); Morgan v. Commissioner, 309 U.S. 78 (1940); Estate of Sweet v. Commissioner, 234 F.2d 401 (10th Cir. 1956), affg. 24 T.C. 488 (1955); Estate of Bennett v. Commissioner, 100 T.C. 42, 59 (1993).  We conclude that the terms of Mr. Spuler's will do not affect petitioner's liability for the IRA distribution, and he must include the full amount in gross income.

Deductions for a SEP

A SEP plan is described in section 408(k).  An employer may make contributions to an employee's retirement account.  See sec.

---

[2]    As a result of our conclusions, we need not consider whether petitioner had a basis in the IRA arising from nondeductible contributions made by his father.

408(a) and (b). Self-employed persons or sole proprietors are treated as their own employers under a SEP plan. See secs. 401(c)(4), 408(k)(7). The qualifying provisions for a SEP plan are extensive. We need not detail the requirements here. While petitioner may have maintained an account described as a SEP account and made contributions to it in the years in issue, he has not established that he was self-employed or a sole proprietor in the year in issue. Petitioner acknowledges that his solely owned corporation, SEC, did not receive income or incur expenses in the years in issue. Petitioner did not receive any money from SEC as a self-employed person or otherwise. In fact, as indicated, petitioner was a full-time employee at Greenhorne & O'Mara, Inc., and received a salary from that organization during 1995 and 1996. Based on the foregoing, petitioner is not entitled to the claimed deductions for SEP contributions.

Self-Employed Health Insurance Deductions

Section 162(l)(1)(A) permits self-employed individuals to deduct amounts paid for health insurance. As discussed above, petitioner was not self-employed during the years in issue and did not receive self-employment income. Petitioner's earned income came from his salary as an employee of Greenhorne & O'Mara, Inc. Accordingly, petitioner is not entitled to the deductions for payments made for health insurance.

Additions To Tax for Failure To File Timely Under Section 6651(a)

Petitioner's 1995 and 1996 Federal income tax returns were not timely filed.  Petitioner does not assert, nor did he present any evidence, that the returns for the years in issue were received or mailed prior to the due date as extended.

Section 6651(a) imposes an addition to tax of 5 percent of the amount of such tax required to be shown on the return per month, not to exceed 25 percent, for failure to timely file a return.  The addition to tax under section 6651(a) is imposed unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect.  The record does not establish that the failures to timely file were due to reasonable cause and not willful neglect.  Thus, respondent is sustained on this issue.

Accuracy Related Penalties Under Section 6662(a)

Section 6662(a) imposes an accuracy-related penalty in the amount of 20 percent of the portion of the underpayment of tax attributable to negligence or disregard of rules or regulations.  See sec. 6662(b)(1).  Negligence is any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws.  See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Moreover, negligence is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances.  Neely v. Commissioner, 85 T.C. 934,

947 (1985).  Disregard includes any careless, reckless, or intentional disregard of rules or regulations.  See sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.  No penalty will be imposed with respect to any portion of any underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.  See sec. 6664(c).

Based on this record, we conclude that petitioner is liable for the accuracy-related penalties under section 6662(a). Petitioner's returns for the years in issue were replete with errors, and petitioner failed to provide credible evidence to substantiate or support entitlement to the deductions claimed. We conclude that petitioner's actions were not those of a reasonable and prudent person under the circumstances.  Thus, we sustain respondent on this adjustment.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.